

United States Department of the Interior
ASSISTANT SECRETARY – INDIAN AFFAIRS
Washington, DC 20240



TAKE PRIDE
IN AMERICA

MAR 1 5 2006

Dear Tribal Leader:

The Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§2701-2721, was signed into law on October 17, 1988. Section 20 of IGRA, 25 U.S.C. § 2719, contains specific provisions that will apply when gaming is to occur on lands that the Secretary of the Interior acquires in trust for an Indian tribe after October 17, 1988.

In accordance with Executive Order 13175, the Department of the Interior will engage in consultation with tribal governments on the development of proposed regulations which will establish standards for implementing Section 20 of IGRA. This section provides that Indian tribes cannot conduct class II or class III gaming on lands acquired in trust after October 17, 1988, unless one of several exceptions applies. The proposed rule will establish the criteria that will be considered by the Department to determine whether a parcel of land acquired in trust after October 17, 1988, qualifies under any of the exceptions listed in 25 U.S.C. § 2719.

As a result of and in keeping with the policy commitment of the Department of the Interior on government-to-government consultation, we are providing you with a copy of the proposed draft regulations developed by the Office of Indian Gaming Management. The Department will conduct consultation sessions on the following dates and at the following locations in order to receive input on these draft regulations.

**March 30, 2006  9:00am-12:00am**
Mohegan Sun Casino and Resort
1 Mohegan Sun Blvd.
Uncasville, Connecticut 06382

**April 5, 2006  2:00pm-5:00pm**
Albuquerque Convention Ctr.
San Miguel Rm 330 Tijeras NW
Albuquerque, New Mexico

**April 18, 2006 9:00am-12:00am**
Radisson Hotel Sacramento
500 Leisure Lane
Sacramento, California

**April 20, 2006 9:00am-12:00am**
Crown Plaza
2200 Freeway Blvd.
Minneapolis, Minnesota

Comments may be mailed or hand delivered to the Office of Indian Gaming Management, 1849 C Street N.W., MS-3657-MIB, Washington, D.C. 20240. If you need additional information regarding the consultation process please contact the Office of Indian Gaming Management at 202-219-4066. Thank you for your interest in Indian gaming issues.

Sincerely,

George T. Skibine
Acting Deputy Assistant Secretary
for Policy and Economic Development

Enclosure



EXHIBIT
1

DRAFT: 3/15/06

# PART 292 - GAMING ON TRUST LANDS ACQUIRED AFTER OCTOBER 17, 1988

Sec.

### Subpart A - General Provisions

| | |
|---|---|
| 292.1 | What is the purpose of this part? |
| 292.2 | How are key terms defined in this part? |
| 292.3 | When can a tribe conduct gaming activities on trust lands acquired after October 17, 1988? |

### Subpart B – Exceptions to Prohibition on Gaming on After-Acquired Lands

| | |
|---|---|
| 292.4 | What criteria must trust land meet for gaming to be allowed under the exceptions listed in 25 U.S.C. § 2719(a) of IGRA? |
| 292.5 | What must be demonstrated to meet the "settlement of a land claim" exception? |
| 292.6 | What must be demonstrated to meet the "initial reservation" exception? |
| 292.7 | What must be demonstrated to meet the "restored lands" exception? |

### Subpart C – Secretarial Two-Part Determination and Governor's Concurrence

| | |
|---|---|
| 292.8 | Can a tribe conduct gaming activities on lands acquired in trust after October 17, 1988 if the land does not qualify under one of the exceptions in Subpart B? |
| 292.9 | Where must a tribe file an application for a Secretarial determination? |
| 292.10 | May a tribe request a Secretarial determination for lands not yet held in trust? |
| 292.11 | What must an application for a Secretarial determination contain? |
| 292.12 | What information must an application contain on the benefits of a proposed gaming establishment to the tribe and its members? |
| 292.13 | What information must an application contain on the detrimental impacts of a proposed gaming establishment? |
| 292.14 | How will the Regional Director conduct the consultation process? |
| 292.15 | What information must the consultation letter include? |
| 292.16 | What information will the Secretary consider to evaluate whether a proposed gaming establishment would be in the best interest of the tribe and its members and would not be detrimental to the surrounding community? |
| 292.17 | How does the Secretary request the Governor's concurrence? |

1

| | |
|---|---|
| 292.18 | Can members of the public review the tribe's application for a Secretarial determination? |
| 292.19 | Do information collections under this part have Office of Management and Budget approval? |

Authority: 5 U.S.C. § 301, 25 U.S.C. §§ 2, 9, and § 2719, 43 U.S.C. § 1457.

SUBPART A – GENERAL PROVISIONS

§ 292.1 **What is the purpose of this part?**

This part contains procedures that the Department of the Interior will use to determine whether class II or class III gaming can occur on land acquired in trust for a tribe after October 17, 1988.

§ 292.2 **How are key terms defined in this part?**

All terms have the same meaning as set forth in the definitional section of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. 2703(1)-(10). In addition, the following terms have the meanings given in this section.

Appropriate State and Local Officials means the Governor of the State and appropriate officials of units of local government within 25 miles of the site of the proposed gaming establishment.

BIA means Bureau of Indian Affairs.

Contiguous means two parcels of land having a common boundary line. For example, it includes parcels divided by non-navigable waters or a public road or right-of-way. Contiguity does not include corner contiguity, when parcels of land only have angle points in common.

Federal recognition or federally recognized means the recognition by the Secretary that an Indian tribe has a government-to-government relationship with the United States and is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, and evidenced by inclusion of the tribe on the list of recognized tribes published by the

Secretary pursuant to 25 U.S.C. § 479a-1.

<u>Former Reservation</u> means lands that are within the jurisdiction of an Oklahoma Indian tribe and that are within the boundaries of the last reservation for that tribe in Oklahoma established by treaty, Executive Order, or Secretarial Order.

<u>IGRA</u> means the Indian Gaming Regulatory Act of 1988, as amended and codified at 25 U.S.C. §§ 2701-2721.

<u>Land claim</u> means any claim arising from a federal common law, statutory or treaty-based restraint against alienation of Indian land and made against an individual person/persons and/or private or public (including governmental) entity/entities by a federally recognized Indian tribe.

<u>Legislative termination</u> means Congressional enactment of federal legislation that specifically terminates or prohibits the government-to-government relationship with a tribe or that otherwise specifically denies the tribe [and/or its members] access to or eligibility for government services.

<u>Nearby Indian tribe</u> means an Indian tribe with Indian ladns, as defined in 25 U.S.C. § 2703(4) of IGRA, located within a 25-mile radius of the location of the proposed gaming establishment, or, if the tribe is landless, within a 25-mile radius of the tribe's government headquarters.

<u>Regional Director</u> means the official in charge of the BIA Regional Office responsible for all BIA activities within the geographical area where the proposed gaming establishment is to be located.

<u>Reservation</u> means that area of land which has been set aside or which has been acknowledged as having been set aside by the United States for the use of the tribe, the exterior boundaries of which are more particularly defined in a final treaty, agreement, Executive Order,

Federal statute, Secretarial Order or Proclamation, or judicial determination.

<u>Secretary</u> means the Secretary of the Interior or authorized representative.

<u>Secretarial Determination</u> means a two-part determination that a gaming establishment on newly acquired lands:

(1) Would be in the best interest of the Indian tribe and its members; and

(2) Would not be detrimental to the surrounding community.

<u>Surrounding community</u> means local governments and nearby tribes located within twenty five (25) miles of the site of the proposed gaming establishments.

## § 292.3 When can a tribe conduct gaming activities on trust lands acquired after October 17, 1988?

In accordance with Section 20 of IGRA (25 U.S.C. § 2719), a tribe may conduct class II or class III gaming activities on land acquired by the Secretary of the Interior in trust for the benefit of an Indian tribe after October 17, 1988, only if:

(a) The land meets the criteria or exceptions in Subpart B; or

(b) The Secretary makes a determination under Subpart C and the Governor of the State in which the gaming activity is to be conducted concurs in that determination.

## SUBPART B – EXCEPTIONS TO PROHIBITION ON GAMING ON AFTER-ACQUIRED TRUST LANDS

## § 292.4 What criteria must trust land meet for gaming to be allowed under the exceptions listed in 25 U.S.C. Section 2719(a) of IGRA?

(a) For class II or class III gaming to be allowed on trust land pursuant to Section 2719(a)(1) of IGRA, the land must meet one of the following criteria:

(1) Such lands are located within or contiguous to the boundaries of the reservation of the

4

Indian tribe on October 17, 1988; or

(2) The Indian tribe has no reservation on October 17, 1988, and

(i) such lands are located in Oklahoma and –

(A) are within the boundaries of the Indian tribe's former reservation, or

(B) are contiguous to other land held in trust or restricted status by the United States for the Indian tribe in Oklahoma; or

(ii) such lands are located in a state other than Oklahoma and are within the Indian tribe's last recognized reservation within the State or States within which such Indian tribe is presently located.

### § 292.5 What must be demonstrated to meet the "settlement of a land claim" exception?

(a) To meet the requirements of IGRA Section 20(b)(1)(B)(i), which allows an Indian tribe to conduct gaming on lands acquired after October 17, 1988 if the lands have been "taken into trust as part of a settlement of a land claim," gaming may be conducted only when:

(1) it is conducted on land that has been acquired in trust as part of the settlement of a land claim that either:

(i) has been filed in federal court and has not been dismissed on substantive grounds; or

(ii) has been identified by the Department of the Interior on its list of potential pre-1966 claims published pursuant to the requirements of Section 3(a) of the Indian Claims Limitation Act of 1982 (Pub. L. 97-394, 28 U.S.C. § 2415);

(2) and either:

(i) in cases where the Indian tribe is relinquishing its legal claim to some or all of the lands as part of the settlement, such that the settlement will result in the alienation or transfer of

title to tribal lands within the meaning of 25 U.S.C. § 177, the settlement of the land claim has been enacted into law by the United States Congress; or,

(ii) in cases where the lands claimed by the Indian tribe are identical to the lands returned by the settlement, such that there is no alienation or transfer of title to tribal lands without Federal consent that would be prohibited under 25 U.S.C. § 177,

(A) the settlement of the land claim has been duly executed by the parties and entered as a final order of a federal court of competent jurisdiction, or

(B) the State has executed an agreement settling the claim.

§ 292.6  What must be demonstrated to meet the "initial reservation" exception?

(a) To meet the requirements of IGRA Section 20(b)(1)(B)(ii), which allows an Indian tribe to conduct gaming on lands acquired after October 17, 1988 if the lands are taken into trust as part of "the initial reservation of an Indian tribe acknowledged by the Secretary under the Federal Acknowledgment Process," gaming may be conducted only when:

(1)  the tribe has been acknowledged (federally recognized) through the administrative process pursuant to the regulations set forth at 25 C.F.R. Part 83; and

(2)  a majority of the tribe's members reside within fifty (50) miles of the location of the land, and

(3) the land is located within an area where the tribe has historical and cultural ties; and

(4) The land has been proclaimed to be a reservation pursuant to 25 U.S.C. § 467; and

(5) This reservation is the first proclaimed reservation of the Indian tribe.

§ 292.7  What must be demonstrated to meet the "restored lands" exception?

(a) To meet the requirements of IGRA Section 20(b)(1)(B)(iii), which allows an Indian tribe to conduct gaming on lands acquired after October 17, 1988 if the lands are taken into trust

as part of "the restoration of lands for an Indian tribe that is restored to federal recognition," gaming may only occur when the criteria in subparagraphs (1), (2), and (3) have been met.

(1) the tribe at one time was federally recognized by the United States government, as evidenced by one or more of the following:

(i) the United States at one time entered into treaty negotiations with the tribe;

(ii) the Department of the Interior determined that the tribe could organize under the Indian Reorganization Act or the Oklahoma Indian Welfare Act;

(iii) Congress enacted legislation specific to, or including the particular tribe indicating that a government-to-government relationship existed;

(v) the United States at one time acquired land for that particular tribe's benefit;

(vi) any other evidence that demonstrates the existence of a government-to-government relationship between the tribe and the federal government.

(2) The tribe at some later time lost its government-to-government relationship, as evidenced by either:

(i) legislative termination; or

(ii) termination of the government-to-government relationship demonstrated by historical or modern testimony or other written documentation from officials of the Department of the Interior or the Department of Justice that the Executive Branch took a specific action or actions to terminate the government-to-government relationship with the particular tribe.

(3) At a time after termination, the tribe was restored to federal recognition by either:

(i) congressional enactment of legislation recognizing, acknowledging, or restoring the government-to-government relationship between the United States and the tribal government (available to tribes terminated by administrative action; required for tribes terminated by

Congressional action);

(ii) recognition through the administrative Federal Acknowledgment Process pursuant to 25 C.F.R. § 83.8; or,

(iii) a judicial determination or a court-approved stipulated entry of judgment entered into by the United States providing that the tribe's government-to-government relationship with the United States was never actually legally terminated despite specific action or actions by the Executive Branch purporting to terminate the relationship with the tribe.

(b) To qualify as "restored lands," it must be demonstrated that:

(1) the legislation restoring the government-to-government relationship between the United States and the tribe requires or authorizes the Secretary to take land in trust within a specific geographical area and the lands are within such specific geographical area; or

(2) if there is no restoration legislation, the tribe has a modern and significant historical connection to the land and there is a temporal connection between the acquisition of the land and the tribe's restoration.

(i) A modern connection is established if a majority of the tribe's members resides within fifty (50) miles of the location of the land;

(ii) A significant historical connection to the land can be established if:

(A) the land is located within the boundaries of the tribe's last reservation reserved to the tribe by a treaty; or

(B) the land is located in an area to which the tribe has significant documented historical connections, significant weight being given to historical connections documented by official Bureau of Indian Affairs or Department of the Interior findings, Indian Claims Commission, other federal court findings, or congressional findings;

(iii) A reasonable temporal connection between the acquisition of the land and the tribe's restoration is established if:

(A) the land is the first land that the tribe has acquired since the tribe was restored to federal recognition; or

(B) the tribe submitted an application to take the land into trust within twenty five (25) years after the tribe was restored to federal recognition; and

(3) if the tribe is acknowledged under 25 C.F.R. § 83.8, it does not already have an initial reservation.

## SUBPART C – SECRETARIAL TWO-PART DETERMINATION AND GOVERNOR'S CONCURRENCE

§ 292.8 Can a tribe conduct gaming activities on lands acquired in trust after October 17, 1988, if the land does not qualify under one of the exceptions in Subpart B?

A tribe can conduct gaming on land acquired in trust after October 17, 1988, that does not meet the criteria in Subpart B only after all of the following occur:

(a) The tribe asks the Secretary in writing to make a Secretarial determination that a gaming establishment on land acquired in trust after October 17, 1988, is in the best interest of the tribe and its members and not detrimental to the surrounding community;

(b) The Secretary consults with the tribe and appropriate State and local officials, including officials of other nearby tribes;

(c) The Secretary makes a determination that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members and would not be detrimental to the surrounding community; and

(d) The Governor of the State in which the gaming activity is to be conducted concurs in the

Secretary's determination (25 U.S.C. § 2719(b)(1)(A)).

**§ 292.9 Where must a tribe file an application for a Secretarial determination?**

A tribe must file its application for a Secretarial determination with the Regional Director of the BIA Regional Office having responsibility over the land where the gaming establishment is to be located.

**§ 292.10 May a tribe request a Secretarial determination for lands not yet held in trust?**

Yes. A tribe can apply for a two-part Secretarial determination under § 292.8 for land not yet held in trust. The tribe must file this application at the same time that it applies under 25 CFR Part 151 to have the land taken into trust.

**§ 292.11 What must an application for a Secretarial determination contain?**

An application requesting a Secretarial determination under § 292.8 must include the following information:

(a) The full name, address, and telephone number of the Indian tribe submitting the application;

(b) A physical description of the location of the land, including a legal description supported by a survey or other document;

(c) Proof of present ownership and title status of the land;

(d) Distance of the land from the Indian tribe's reservation or trust lands, if any, or tribalk headquarters;

(e) Information required by § 292.12 to assist the Secretary in determining whether the proposed gaming establishment will be in the best interest of the tribe and its members;

(f) Information required by § 292.13 to assist the Secretary in determining whether the proposed gaming establishment will not be detrimental to the surrounding community;

10

(g) The authorizing resolution from the tribe submitting the application;

(h) The tribe's gaming ordinance or resolution approved by the National Indian Gaming Commission in accordance with 25 U.S.C. § 2710, if any;

(i) The tribe's organic documents, if any;

(j) The tribe's class III gaming compact with the State where the gaming establishment is to be located, if one has been negotiated; and

(k) Any existing or proposed management contract required to be approved by the National Indian Gaming Commission pursuant to 25 U.S.C. § 2711 and 25 C.F.R. Part 533.

**§ 292.12 What information must an application contain on the benefits of a proposed gaming establishment to the tribe and its members?**

To satisfy the requirements of § 292.11(e), an application must contain:

(a) Projections of class II and/or class III income statements, balance sheets, fixed assets accounting, and cash flow statements for the gaming entity and the Indian tribe;

(b) Projected tribal employment, job training, and career development;

(c) Projected benefits to the Indian tribe from tourism;

(d) Projected benefits to the Indian tribe and its members from the proposed uses of the increased tribal income;

(e) Projected benefits to the relationship between the Indian tribe and the surrounding community;

(f) Possible adverse impacts on the Indian tribe and plans for addressing those impacts;

(g) Distance of the land from the location where the tribe maintains core governmental functions;

(h) Evidence that the tribe owns the land in fee or holds an option to acquire the land at the

11

sole discretion of the tribe, or holds other contractual rights to cause the lands to be transferred directly to the United States;

(i) Any other information that may provide a basis for a Secretarial determination that the gaming establishment would be in the best interest of the Indian tribe and its members, including copies of any:

(1) Consulting agreements;

(2) Financial agreements; and

(3) Other agreements relative to the purchase, acquisition, construction, or financing of the proposed gaming facility, or the acquisition of the land where the facility will be located.

**§ 292.13  What information must an application contain on the detrimental impacts of a proposed gaming establishment?**

To satisfy the requirements of § 292.11(f), an application must contain:

(a) Information regarding environmental impacts and plans for mitigating adverse impacts, including information that allows the Secretary to comply with the requirements of the National Environmental Policy Act (NEPA) (for example, an Environmental Assessment (EA) or an Environmental Impact Statement (EIS));

(b) Reasonably anticipated impacts on the social structure, infrastructure, services, housing, community character, and land use patterns of the surrounding community;

(c) Impacts on the economic development, income, and employment of the surrounding community;

(d) Costs of impacts to the surrounding community and sources of revenue to accommodate them;

(e) Proposed programs, if any, for compulsive gamblers and the sources of funding; and

(f) Any other information that may provide a basis for a Secretarial determination that the gaming would not be detrimental to the surrounding community, including memoranda of understanding and inter-governmental agreements with affected local governments.

### § 292.14 How will the Regional Director conduct the consultation process?

(a) The Regional Director will send a letter that meets the requirements in § 292.15 and that solicits comments within a 60-day period to each of the following:

(1) Appropriate State and local officials; and

(2) Officials of nearby tribes.

(b) Upon written request, the Regional Director may extend the 60-day comment period for an additional 30 days.

(c) After the close of the consultation period, the Regional Director must:

(1) Submit a copy of the consultation comments to the applicant tribe;

(2) Allow the tribe to address or resolve any issues raised in the responses to the consultation letters;

(d) The applicant tribe must submit written comments, if any, to the Regional Director within 60 days of receipt of the consultation comments; and

(e) On written request, the Regional Director may extend the 60-day comment period in paragraph (c)(3) for an additional 30 days.

### § 292.15 What information must the consultation letter include?

(a) The consultation letter required by § 292.14(a) must:

(1) Describe or show the location of the proposed gaming facility;

(2) Provide information on the proposed scope of gaming; and

(3) Include other information that may be relevant to a specific proposal, such as the size of

the proposed facility, if known.

(b) The consultation letter must request recipients to submit comments on the following areas within 60 days of receiving the letter:

(1) Information regarding environmental impacts and plans for mitigating adverse impacts;

(2) Reasonably anticipated impacts on the social structure, infrastructure, services, housing, community character, and land use patterns;

(3) Impact on the economic development, income, and employment;

(4) Costs of impacts to the surrounding community or nearby tribe and sources of revenue to accommodate them;

(5) Proposed programs, if any, for compulsive gamblers and the sources of funding; and

(6) Any other information that may provide a basis for a Secretarial determination that the gaming is not detrimental to the surrounding community.

**§ 292.16 What information will the Secretary consider to evaluate whether a proposed gaming establishment would be in the best interest of the tribe and its members and would not be detrimental to the surrounding community?**

(a) We will consider all the information submitted pursuant to § 292.12 in evaluating whether the proposed gaming establishment is in the best interest of the tribe and its members.

(b) We will consider all the information submitted or developed pursuant to § 292.13 and all the documentation received pursuant to § 292.14 in evaluating whether the proposed gaming establishment would not be detrimental to the surrounding community.

(c) If the Secretary makes an unfavorable determination, the Secretary will inform the tribe that its application has been disapproved, and set forth the reasons for the disapproval.

(d) If the Secretary makes a favorable determination, the Secretary will proceed as set forth in

§ 292.17.

§ 292.17 **How does the Secretary request the Governor's concurrence?**

(a) If the Secretary makes a favorable two-part determination, the Secretary will send to the Governor of the State:

(1) A written notification of the Secretarial determination and Findings of Fact supporting the determination;

(2) A copy of the entire application record; and

(3) A request for the Governor's concurrence in the Secretarial determination.

(b) If the Governor does not affirmatively concur with the Secretarial determination:

(1) The land may not be used for gaming;

(2) If the land is already held in trust, the applicant tribe may use it for other purposes; and

(3) If the land is proposed for trust status, it may be taken into trust for non-gaming uses after consideration of a revised application.

(c) If the Governor does not respond to the Secretary's request for concurrence in the Secretarial determination within one year of the date of the request, the Secretary may, at the request of the applicant tribe or the Governor, grant an extension of up to 180 days.

(d) If the Governor does not respond during the extension period, the applicant tribe will be notified in writing that the Secretarial determination is no longer valid and that its application is no longer under consideration.

§ 292.18 **Can members of the public review the tribe's application for a Secretarial determination?**

Subject to restrictions on disclosure required by the Freedom of Information Act (5 U.S.C. § 552), the Privacy Act (5 U.S.C. § 552a) and the Trade Secrets Act (18 U.S.C. § 1905), the tribe's

application and all supporting documents will be available for review at the local BIA agency or Regional Office having administrative jurisdiction over the land.

**§ 292.19 Do information collections under this part have Office of Management and Budget approval?**

We will submit a request for approval of the information collection requirements in §§ 292.11, 292.12, 292.13, 292.14 to the Office of Management and Budget (OMB). We may not collect or sponsor, and a person is not required to respond to, a collection of information until we have:

(a) Obtained OMB approval; and

(b) Revised this section (§ 292.16) to reflect OMB approval by publishing a final rule in the <u>Federal Register</u>.


Dated:


Assistant Secretary - Indian Affairs