EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FORT SILL APACHE TRIBE OF OKLAHOMA, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIV-04-337-R |
| UNITED STATES OF AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) | |

### ORDER

Before the Court is the Emergency Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) or for Injunction Staying Agency Action Pending Appeal Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C) filed by Plaintiff Fort Sill Apache Tribe of Oklahoma on March 29, 2004. By this motion, the Plaintiff requests that the Court reconsider its earlier ruling on the Tribe's application for a temporary restraining order in light of new evidence or, in the alternative, that the Court grant an injunction pursuant to Fed. R. App. P. 8(a)(1)(C) and Tenth Circuit Rule 8.1 pending appeal of the Court's Order of March 24, 2004, to the Tenth Circuit Court of Appeals.

In its original application for a temporary restraining order, Plaintiff sought an Order mandating that Defendants not approve a Tribal-State Off Track Wagering Compact (Compact) between the Chickasaw Nation and the State of Oklahoma until a determination was made as to whether the parcels of land identified in the Compact are Indian lands as set

forth in 25 U.S.C. § 2703(4) and comply with the requirements of 25 U.S.C. § 2719 as it relates to the prohibition of gaming on lands acquired in trust after October 17, 1988. Alternatively, Plaintiff sought an Order staying the 45-day time period after which, if the Secretary of the Interior did not affirmatively approve or disprove the Compact, the Compact would be deemed approved. *See* 25 U.S.C. § 2710(d)(8)(C). Plaintiff also requested that the Court enjoin publication of the Compact in the Federal Register. On March 23, 2004, the Court denied Plaintiff's application for a temporary restraining order on several grounds and dismissed the case based upon the inability to join indispensable parties, specifically the Chickasaw Nation and the State of Oklahoma.

The new evidence to which Plaintiff refers in the current motion is the affirmative approval by the Assistant Secretary of Indian Affairs of the Compact on March 24, 2004 (Exhibit "1" to Plaintiff's Emergency Motion to Alter or Amend) and the finding of the Acting Regional Director of the United States Department of the Interior Bureau of Indian Affairs that "[t]he sites described in the Compact are located within that area of land constituting the former reservation of the Chickasaw Nation in Oklahoma." Exhibit "2" to Plaintiff's Emergency Motion.

On March 30, 2004, the Court held a hearing on Plaintiff's Emergency Motion. Following the hearing, the Court entered an Order restraining Defendants from publishing the Secretary's Notice of Approval of the Compact in the Federal Register for a period of ten days or through April 9, 2004, which was subsequently extended to April 16, 2004, to allowing briefing on Plaintiff's Emergency Motion, after which the Defendant would be

given the opportunity to show cause why the temporary restraining order should not be made a preliminary injunction. See Order of March 30, 2004. On April 6, 2004, Defendants filed their "Supplemental Brief in Opposition to Plaintiff's Motion to Alter Judgment" and the Choctaw Nation of Oklahoma obtained leave to file and filed their Brief Amicus Curiae. On April 13, 2004, Plaintiff filed its Reply Brief. The Court now addresses Plaintiff's motion to alter or amend judgment and motion for a preliminary injunction or stay pending appeal.

### Jurisdiction

The Court has jurisdiction to review the decision of the Assistant Secretary in this action seeking declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* and Defendants' sovereign immunity is waived for that purpose pursuant to Section 702 of that Act. *See* 5 U.S.C. § 702.

### Motion to Alter or Amend

Grounds warranting the granting of a motion to reconsider, treated as a motion to alter or amend when filed within ten days after entry of judgment, include 1) an intervening change in the law; 2) new evidence previously unavailable; and 3) the need to correct clear error or prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). Contrary to Defendants' argument, on or before March 23, 2004, when the Court denied Plaintiff's application for a temporary restraining order, evidence that the Assistant Secretary would approve or had affirmatively approved the Compact did not exist and Plaintiff could not in the exercise of diligence have discovered the evidence on or before

-3-

March 23, 2004. Thus, the evidence Plaintiff presents of the Assistant Secretary's decision is both new evidence and newly discovered evidence that was not available at the time judgment was entered.

### Indispensable Parties

Because the Assistant Secretary has now affirmatively acted to approve the Compact, the Defendants' interest in defending that decision is substantially similar if not identical to the interests of the Chickasaw Nation and the State of Oklahoma, thereby ameliorating if not preventing the potential of prejudice to those nonparties. *Compare with Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1259 & 1260 (10th Cir. 2001). Moreover, a judgment herein rendered in the absence of the Chickasaw Nation and the State of Oklahoma would be adequate because the claims herein turn solely on the appropriateness of the Assistant Secretary's decision and Defendants are certainly capable of defending that decision. *Compare with id.*, 240 F.3d at 1260. The absence of the Chickasaw Nation and the State of Oklahoma does not prevent Plaintiff from obtaining the relief requested and there does not appear to be an alternate forum in which Plaintiff's claims can be heard. *Compare with id.* Accordingly, in light of the new evidence of an affirmative decision by the Assistant Secretary, even if the Chickasaw Nation and the State of Oklahoma are necessary parties under Rule 19(a), F.R.Civ.P., *but see Sac and Fox Nation of Missouri v. Norton*, 240 F.3d at 1259, they are not now indispensable parties under Rule 19(b), F.R.Civ.P., *see id.* at 1259-60, such that the inability to join those parties due to their sovereign immunity requires dismissal. Accordingly, based upon the new evidence, the Court vacates its Order of March

23, 2004 dismissing this case for failure to join indispensable parties. Alternatively, based upon a change in circumstances, to prevent manifest injustice, the Court vacates its Order of March 23, 2004 dismissing this case. Plaintiff's motion for a stay of this Court's Order of March 23, 2004 pending appeal is moot.

## Standing

Defendants do not challenge Plaintiff's standing in the constitutional sense. However, they assert that Plaintiff lacks statutory standing under Section 702 of the APA, citing *Kansas v. United States*, 249 F.3d 1213, 1222 (10th Cir. 2001). In this case, there is no question but that the decision of the Assistant Secretary is a final decision of the Department of Interior, 25 C.F.R. § 2.6(c), that is, a "final agency action." *See* 5 U.S.C. § 704; *Kansas v. United States*, 249 F.3d at 1222. Defendants assert that Plaintiff cannot show that such action subjected the Plaintiff to a "legal wrong" or adversely "affected or aggrieved" Plaintiff "within the meaning of the relevant statute," 5 U.S.C. § 702, that is, that the interest sought to be protected by Plaintiff is "arguably within the zone of interests to be protected or regulated by the statute in question," *Kansas v. United States*, 249 F.3d at 1222, *quoting National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) because the statute in question, the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* (IGRA), specifically 25 U.S.C. § 2719(b)(1)(A), removes Plaintiff as a party with an interest which should be addressed. *See* Supplemental Brief in Opposition to Plaintiff's Motion to Alter Judgment at p. 15. In this regard, Defendants point out that when land placed in trust after October 17, 1988 is within the

boundaries of a tribe's former reservation, see 25 U.S.C. § 2719(a)(2)(A)(i), as is the case herein, Defendants assert, Congress did not see fit to grant the Plaintiff any advance notice as might otherwise be required under § 2719(b) for such land to be used for gaming purposes. Defendants point out that § 2719 only grants neighboring tribes like the Plaintiff a legitimate interest in whether land acquired after October 17, 1988 is used for gaming purposes if the land is not part of an Oklahoma tribe's former reservation, as defined by the Secretary. However, like Defendants' argument in *Kansas v. United States*, 249 F.3d at 1223, Defendants' argument presupposes that the parcel of land in question is within the former reservation of the Chickasaw Nation, as defined by the Secretary, which Plaintiff impliedly challenges. If the parcel is not within the former reservation of the Chickasaw Nation, then Plaintiff as a nearby Indian tribe is within the zone of interest to be protected by the statute in question. *See* 25 U.S.C. § 2719(b). Accordingly, the Court concludes that the interest sought to be protected by the Plaintiff is "*arguably* within the zone of interests to be protected or regulated by the statute in question." *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (emphasis added). *Compare with Kansas v. United States*, 249 F.3d at 1222-23.

### Injunctive Relief

To obtain a preliminary injunction, Plaintiff must demonstrate (1) that it will suffer irreparable harm if the injunction is not granted; (2) that its threatened injury outweighs the harm caused to the opposing party as a result of the injunction; (3) that the injunction is not adverse to the public interest; and (4) that it has a substantial likelihood of success on the

merits of the case. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004), *citing Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). Courts ordinarily require that the moving party first demonstrate the single most important prerequisite for issuance of a preliminary injunction – probable irreparable harm – before the other requirements are considered. *See id.* Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). If Plaintiff can demonstrate the first three requirements for issuance of a preliminary injunction, then instead of showing a substantial likelihood of success on the merits, the Plaintiff need only show that there are "questions going to the merits . . . so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d at 1246-47, *quoting Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

### Irreparable Harm

Plaintiff asserts that it will suffer irreparable harm primarily in the form of lost business profits from a casino Plaintiff operates in Lawton, Oklahoma, the amount of which is difficult to calculate. *See* Brief in Support of Application for Temporary Restraining Order and Preliminary Injunction Staying Agency Action Pending Review filed March 22, 2004 at p. 14, citing *Ticor Title Insurance v. Cohen*, 173 F.3d 63, 69 (2nd Cir. 1999). In support of its assertion, Plaintiff has submitted the Declaration of Jeff Houser (Exhibit "1" to Brief in Support of Application), its Chairman, who declares that the net monthly income that the

casino his tribe operates is approximately $600,000 and that the revenues from it are used to fund programs such as adult education, scholarships for students in colleges and universities, family violence prevention, child welfare, community health, emergency youth shelter, environmental programs, burial assistance, transportation and general governmental administration.  Declaration of Jeff Houser at ¶¶ 3 & 4.  He further declares that if the Compact for off-track betting on a site twenty-five miles to the east of his tribe's casino is approved, there will be a significant decrease in casino revenues and therefore of the funds available for necessary tribal government services apparently because, he states, "[a] substantial portion of the customers who come to our Casino are from the area where the OTB [off-track betting] site" is located.  *Id.* at ¶¶.  Finally, he states as follows:

> The harm of a present decrease in tribal employment cannot be replaced by future profits.  School supplies, day care services and jobs for single parents are present needs which will go unmet which will result in irreparable harm to the tribe if the Casino is so affected.

*Id.* at ¶ 6.

Although "irreparable harm" is not easily defined, case law indicates that the injury must be both "certain and great" and not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d at 1250 (quoting *O.A. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3rd Cir. 1976)).  When injury cannot be adequately compensated in the form of damages because of sovereign immunity, the injury is irreparable. *Id.*  The loss of income used to support a tribe's social services and jobs employing Indians and the resultant prospect of interference with a tribe's self-government has been held to constitute irreparable harm.

*Seneca-Cayuga Tribe v. State ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989). Based upon the foregoing, the Court finds that Plaintiff has demonstrated irreparable harm.

### Balancing of Potential Harms

Defendants assert that the Secretary and the NIGC Defendants will be harmed if the Court issues an injunction. Forcing them to litigate the meaning of "former reservation" in this case would, according to Defendants, disrupt settled definitions used not only in Class II and Class III gaming in Oklahoma but also in numerous other federal programs. *See* Defendants' Supplemental Brief at pp. 17-19 (listing numerous programs and acts employing the definition of "former reservation"). In this regard, the Court observes that Congress specifically delegated to the Secretary of the Interior the task of defining "former reservation" in Oklahoma for purposes of the statute in question. *See* 25 U.S.C. § 2719(a)(2)(A)(ii). The Court further agrees with the Amicus Curiae that federal interests in governmental regularity, administrative efficiency, and tribal economic self-sufficiency would be harmed by issuance of the injunction. Finally, although the Chickasaw Nation is not a party herein, its economic interests would be harmed by issuance of an injunction which would delay or prevent the Compact from becoming effective and delay or prevent opening of the off-track betting facility. Based upon the foregoing and considering the somewhat speculative nature of the threatened harm to the Plaintiff, both in fact and in amount, the Court finds that the harm to the Defendants and the Chickasaw Nation outweighs the threatened harm to Plaintiff.

### The Public Interest

In support of its initial application for a temporary injunction, Plaintiff argued that it is clearly in the public interest for the Secretary to determine the definition of "'former reservation' in Oklahoma." Brief in Support of Application for Temporary Restraining Order at p. 16. Now that the Secretary has made that determination, that argument is moot and Plaintiff does not address whether issuance of the injunction would be adverse to the public interest. Rather, Plaintiff implies that the <u>substance</u> or <u>merits</u> of the Assistant Secretary's determination of the boundaries of the former reservation of Indian tribes in Oklahoma is contrary to the public interest because approximately one-half of the State of Oklahoma is not only "former reservation" for purposes of IGRA but also currently "reservation" for purposes of the Secretary of Interior's powers under the Indian Reorganization Act. Emergency Motion to Alter or Amend at p. 15. Plaintiff suggests that issuance of a preliminary injunction would serve the public interest because under the adopted broad definition of former reservation in Oklahoma, there is the potential for the State of Oklahoma to lose a significant amount of tax revenues. On the other hand, the Amicus Curiae Choctaw Nation states that "[w]holly apart from the Class III gaming compacting issue raised with respect to the Chickasaw Nation herein, the potential spillover consequences of Plaintiff's allegations, theories and argumentation directly threaten the economic security and welfare of the Choctaw Nation." Motion of the Choctaw Nation at pp. 2-3. And because the Choctaw Nation has also compacted with the State of Oklahoma for Class III gaming purposes and may wish to do so in the future with respect to lands potentially subject to Plaintiff's theories, the Class III compacting issue in this case also directly affects the

economic security and welfare of the Choctaw Nation, it asserts. See id at p. 3. Indeed, the Choctaw Nation states that "the sweeping potential Class II gaming consequences of any ruling by this Court on Plaintiff's breathtakingly sweeping core theory of the case could well throw not only the Choctaw Nation's but perhaps most if not all other Oklahoma gaming tribes' Class II gaming operations into legal uncertainty and chaos." Id. at p. 4. Thus, in summary, Plaintiff has not shown that issuance of a preliminary injunction would not be adverse to the public interest and it appears to the Court that issuance of the injunction may well threaten the economic security and welfare of tribes which currently conduct Class II and Class III gaming. See *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d at 1253 (tribal self-government may be a matter of public interest), citing *Seneca Cayuga*, 874 F.2d at 716 ("[T]he injunction promotes the paramount federal policy that Indians develop independent sources of income and strong self-government.").

### Substantial Likelihood of Success on the Merits

Because Plaintiff has not established each of the foregoing three factors, Plaintiff is required to demonstrate a substantial likelihood of success on the merits rather than merely that there are "questions going to the merits . . . so serious substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *FLLC*, 195 F.3d at 1194. To determine whether Plaintiff has met that burden, the Court examines Plaintiff's assertions. Plaintiff does not appear to assert that the approval of the Compact by the Assistant Secretary of Indian Affairs, see Exhibit "1" to Emergency Motion to Alter or Amend, is not a decision of the Secretary of the Interior, not could it. See 25

C.F.R. § 2.6(c). Implicit in the approval of the Compact is the Assistant Secretary's determination that the land which is the subject of the Compact is within boundaries of the Chickasaw Tribe's "former reservation." *See id.* (the Compact "does not violate the Indian Gaming Regulatory Act of 1988 (IGRA), Federal law, or our trust responsibility."). However, Plaintiff asserts that the opinion rendered March 23, 2004, by an Area Director, does not meet the requirement for an Office of the Solicitor's opinion that the land is within the tribe's former reservation. Emergency Motion to Alter or Amend at p. 3, citing Exhibit "4" to Plaintiff's Complaint at pp. 6-7. Plaintiff cites to a "Checklist for Gaming Acquisitions Gaming-Related Acquisitions and IGRA Section 20 Determinations" which indicates that an applicant who wishes to conduct gaming on land in Oklahoma acquired by the Secretary in trust after October 17, 1988 should include in their acquisition package, *inter alia*, "an Office of the Solicitor's opinion that the land is within the tribe's former reservation." Checklist (Exhibit "4" to Complaint) at pp. 6-7. This checklist provided for gaming acquisition *applicants* does not provide authority for Plaintiff's position that the Secretary or Assistant Secretary must obtain or rely on an opinion from the Office of the Solicitor that land acquired in trust after October 17, 1988, if it is to be used for gaming by a tribe, is within the tribe's former reservation. Moreover, in any event, the Memorandum dated September 21, 1993 which the Acting Regional Director of the Bureau of Indian Affairs adopted, see Exhibit "2" to Emergency Motion to Alter or Amend, concluding that the former treaty lands of the Five Civilized Tribes are tantamount to "former reservation land" as intended by Congress in § 2719(a)(2)(A)(ii) and should be accorded such status for

IGRA, is from the Office of the Field Solicitor to the Associate Solicitor.  See attachment to Exhibit "2" to Emergency Motion to Alter or Amend.  In other words, it is apparent that the Office of the Solicitor adopted that opinion and that the Assistant Secretary implicitly adopted that definition of former reservation of the Chickasaw Nation when he approved the Compact.  *See* Exhibits "1" and "2" to Emergency Motion to Alter or Amend.  Congress has by statute given the Secretary of the Department of Interior the duty to and task of defining the boundaries of an Indian tribe's former reservation in Oklahoma.  25 U.S.C. § 2719.  There is no legal impediment to the Secretary doing so by relying on a 1993 Memorandum addressing that issue as was done herein.

Plaintiff asserts that "the only reasonable definition of 'former reservation' for trust purposes under the IRA [Indian Reorganization Act of 1934, 25 U.S.C. § 461 et seq.] and the IGRA in Oklahoma . . . is a definition that takes into account not only the physical borders of the last recognized reservation boundaries, but of a tribe's 'jurisdictional area,' i.e. those lands that were within the last recognized reservation and which were held in trust at the time of the effective date of the IGRA – October 17, 1988." Plaintiff's Supplemental Brief for Preliminary Injunction at p. 13.  In a convoluted argument, Plaintiff asserts that both the language of 25 U.S.C. § 2719(a) and Senate Report No. 99-493, 99th Cong. 2d Sess. 10 (1986), quoted in the Field Solicitor's Memorandum, *see* Exhibit "2" to Plaintiff's Emergency Motion to Alter or Amend at pp. 3-4, support the notion that the definition of a former reservation in Oklahoma must take into account both the former geographic boundaries of a tribe's disestablished reservation and whether the land was held in some form

of trust status, even, for example, for an individual member of the tribe. Plaintiff argues that a definition of "former reservation" in 25 U.S.C. § 2719(a)(2)(A)(i) for the Five Civilized Tribes that includes all of the land area covered by those reservations, which covers approximately one-half of the land mass in the State of Oklahoma, renders 25 U.S.C. § 2719(a)(2)(A)(ii), allowing for gaming on lands taken into trust after October 17, 1988 if the lands are in Oklahoma and "contiguous to other land held in trust or restricted status by the United States for the Indian tribe in Oklahoma," a nullity, as a practical matter. *See* Plaintiff's Supplemental Brief at p. 18. The Court disagrees. Moreover, the Court concludes that Plaintiff's argument would render Section 2719(a)(1) and (2) a nullity. Land taken in trust after October 17, 1988 could never be used for gaming because while such land might fall within the boundaries of the Indian tribe's former reservation, it could not have been held in trust status before October 17, 1988.

Considering the foregoing, Plaintiff has failed to demonstrate that it has a substantial likelihood of success on the merits.

In accordance with the foregoing, Plaintiff's motion to alter or amend the Order of March 23, 2004 insofar as the Court held that the Chickasaw Nation and the State of Oklahoma are indispensable parties and dismissed this case is GRANTED. Plaintiff's Motion for an Injunction Staying Agency Action Pending Appeal from the Court's March 23, 2004 Order is DENIED as moot. Upon reconsideration of Plaintiff's motion for a temporary restraining order, treated as a motion for a preliminary injunction, Plaintiff's motion is DENIED.

IT IS SO ORDERED this 15th day of April, 2004.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

-15-