DRAFT: 1/25/05

[4310-02-P]

DEPARTMENT OF THE INTERIOR

Bureau of Indian Affairs

25 CFR Part 292

RIN: 1076-AD93

Gaming on Trust Lands Acquired After October 17, 1988

AGENCY:   Bureau of Indian Affairs, Interior.

ACTION:   Proposed rule

SUMMARY: This proposed rule establishes criteria for implementing Section 20 of the Indian Gaming Regulatory Act.

DATES: Comments must be received on or before [insert date 60 days after the date of publication in the FEDERAL REGISTER].

ADDRESSES: If you wish to comment, you may submit your comments by any one of several methods. See SUPPLEMENTARY INFORMATION section.

FOR FURTHER INFORMATION CONTACT: George Skibine, Director, Office of Indian Gaming Management, Bureau of Indian Affairs, 1849 C Street NW, MS-4600 MIB, Washington, DC 20240; by telephone at (202) 219-4066; or by telefax at (202) 273-3153.

SUPPLEMENTARY INFORMATION:

EXHIBIT 2

1

**General Comments**

You may mail comments to the Office of Indian Gaming Management, Bureau of Indian Affairs, 1849 C Street, NW, MS-4600 MIB, Washington, DC 20240.

**Electronic Access and Filing**

You may also comment via the Internet to [gamingcomments@BIA.GOV]. Please submit Internet comments as an ASCII file avoiding the use of special characters and any form of encryption. Please also include "Attn: 1076-AD93" and your name and return address in your Internet message. If you do not receive a confirmation from the system that we have received your Internet message, contact the Office of Indian Gaming Management directly at (202) 219-4066.

Finally, you may hand-deliver comments to the Office of Indian Gaming Management, Bureau of Indian Affairs, 1849 C Street NW, MS-4600 MIB, Washington, DC 20240.

Our practice is to make comments, including names and home addresses of respondents, available for public review during regular business hours. Individual respondents may request that we withhold their home address from the rulemaking record, which we will honor to the extent allowable by law. There also may be circumstances in which we would withhold from the rulemaking record a respondent's identity, as allowable by law. If you wish us to withhold your name and/or address, you must state this prominently at the beginning of your comments. However, we will not consider anonymous comments. We will make all submissions from organizations or businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, available for public inspection in their entirety.

**Background**

The Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721, was signed into law on October 17, 1988. Section 20 of IGRA, 25 U.S.C. § 2719, contains specific provisions for lands that

the Secretary of the Interior acquires in trust for an Indian tribe after October 17, 1988. This section provides that Indian tribes cannot conduct class II and class III gaming on lands acquires in trust after October 17, 1988, unless one of several exceptions applies. This proposed rule establishes criteria that will be considered by the Department to determine whether a parcel acquired in trust after October 17, 1988, qualifies under any of the exceptions listed in 25 U.S.C. § 2719.

**Drafting Information**

The primary author of this document is George Skibine, Director, Office of Indian Gaming Management, Bureau of Indian Affairs, Department of the Interior.

**List of Subjects in 25 CFR Part 292**

Indians--gaming, Indians--lands

For the reasons given in the preamble, Part 292 is proposed to be added to Chapter I of Title 25 of the Code of Federal Regulations as set forth below.

**PART 292 - GAMING ON TRUST LANDS ACQUIRED AFTER OCTOBER 17, 1988**

Sec.

### Subpart A - General Provisions

| | |
|---|---|
| 292.1 | What is the purpose of this part? |
| 292.2 | How are key terms defined in this part? |
| 292.3 | When can a tribe conduct gaming activities on trust lands acquired after October 17, 1988? |

### Subpart B – Exceptions to Prohibition on Gaming on After-Acquired Lands

| | |
|---|---|
| 292.4 | What criteria must trust land meet for gaming to be allowed under the exceptions listed in 25 U.S.C. § 2719(a) of IGRA? |
| 292.5 | What must be demonstrated to meet the "settlement of a land claim" exception? |
| 292.6 | What must be demonstrated to meet the "initial reservation" exception? |
| 292.7 | What must be demonstrated to meet the "restored lands" exception? |

### Subpart C – Secretarial Two-Part Determination and Governor's Concurrence

| | |
|---|---|
| 292.8 | Can a tribe conduct gaming activities on lands acquired in trust after October 17, |

| | |
|---|---|
| | 1988 if the land does not qualify under one of the exceptions in Subpart B? |
| 292.9 | Where must a tribe file an application for a Secretarial determination? |
| 292.10 | May a tribe request a Secretarial determination for lands not yet held in trust? |
| 292.11 | What must an application for a Secretarial determination contain? |
| 292.12 | What information must an application contain on the benefits of a proposed gaming establishment to the tribe and its members? |
| 292.13 | What information must an application contain on the detrimental impacts of a proposed gaming establishment? |
| 292.14 | How will the Regional Director conduct the consultation process? |
| 292.15 | What information must the consultation letter include? |
| 292.16 | What criteria will the Secretary use to evaluate whether a proposed gaming establishment would be in the best interest of the tribe and its members and would not be detrimental to the surrounding community? |
| 292.17 | How does the Secretary request the Governor's concurrence? |
| 292.18 | Can members of the public review the tribe's application for a Secretarial determination? |
| 292.19 | Do information collections under this part have Office of Management and Budget approval? |

Authority: 5 U.S.C. § 301, 25 U.S.C. §§ 2, 9, and § 2719, 43 U.S.C. § 1457.

## SUBPART A – GENERAL PROVISIONS

### § 292.1 What is the purpose of this part?

This part contains procedures that the Department of the Interior will use to determine whether class II or class III gaming can occur on land acquired in trust for a tribe after October 17, 1988.

### § 292.2 How are key terms defined in this part?

All terms have the same meaning as set forth in the definitional section of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. 2703(1)-(10). In addition, the following terms have the meanings given in this section.

Appropriate State and Local Officials means the Governor of the State and appropriate officials of units of local government within 10 miles of the site of the proposed gaming establishment.

BIA means Bureau of Indian Affairs.

4

<u>Contiguous</u> means land(s) sharing a common boundary, or adjoining with nothing intervening. However, parcels of land are contiguous even if separated by roads, railroads, other rights of way, or streams.

<u>Federal recognition or federally recognized</u> means the recognition by the Secretary that an Indian tribe has a government-to-government relationship with the United states and is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, and evidenced by inclusion of the tribe on the list of recognized tribes published by the Secretary pursuant to 25 U.S.C. § 479a-1.

<u>Former Reservation</u> means lands that are within the jurisdiction of an Oklahoma Indian tribe, and that are within the boundaries of the last reservation for that tribe in Oklahoma established by treaty, Executive Order, or Secretarial Order.

<u>IGRA</u> means the Indian Gaming Regulatory Act of 1988, as amended and codified at 25 U.S.C. §§ 2701-2721.

<u>Land claim</u> means any claim arising from a federal common law, statutory or treaty-based restraint against alienation of Indian land and made against an individual person/persons and/or private or public (including governmental) entity/entities by a federally recognized Indian tribe.

<u>Legislative termination</u> means Congressional enactment of federal legislation that specifically terminates or prohibits the government-to-government relationship with a tribe or that otherwise specifically denies the tribe [and/or its members] access to or eligibility for government services.

<u>Nearby Indian Tribe</u> means an Indian tribe with Indian lands, as defined in 25 U.S.C. § 2703(4) of IGRA, located within a 50-mile radius of the location of the proposed gaming

establishment, or, if the tribe is landless, within a 50-mile radius of the tribe's government headquarters.

Regional Director means the official in charge of the BIA Regional Office responsible for all BIA activities within the geographical area where the proposed gaming establishment is to be located.

Reservation means that area of land which has been set aside or which has been acknowledged as having been set aside by the United States for the use of the tribe, the exterior boundaries of which are more particularly defined in a final treaty, agreement, Executive order, Federal statute, Secretarial Order or Proclamation, or judicial determination.

Secretary means the Secretary of the Interior or authorized representative.

Secretarial Determination means a two-part determination that a gaming establishment on newly acquired lands:

(1) Would be in the best interest of the Indian tribe and its members; and

(2) Would not be detrimental to the surrounding community.

Service area means any area designated for the provision of financial assistance, health services, housing grants, or other social services to Indians by the Bureau of Indian Affairs, the Department of Housing and Urban Development, or the Department of Health and Human Services, including the Indian Health Service.

Surrounding community means local governments located within ten (10) miles of the site of the proposed gaming establishment and nearby tribes locate within fifty (50) miles of the site of the proposed gaming establishments.

§ 292.3 When can a tribe conduct gaming activities on trust lands acquired after October 17, 1988?

(a) To meet the requirements of IGRA Section 20(b)(1)(B)(i), which allows an Indian tribe to conduct gaming on lands acquired after October 17, 1988 if the lands have been "taken into trust as part of a settlement of a land claim," gaming may be conducted only when:

(1) it is conducted on land that has been acquired in trust as part of the settlement of a land claim that either:

(i)    has been filed in federal court and has not been dismissed on substantive grounds;

or

(ii) has been identified by the Department of the Interior on its list of potential pre-1966 claims published pursuant to the requirements of Section 3(a) of the Indian Claims Limitation Act of 1982 (Pub. L. 97-394, 25 U.S.C. § 2415);

(2) and either:

(i) in cases where the Indian tribe is relinquishing its legal claim to some or all of the lands as part of the settlement, such that the settlement will result in the alienation or transfer of title to tribal lands within the meaning of 25 U.S.C. § 177, the settlement of the land claim has been enacted into law by the United States Congress; or,

(ii) in cases where the lands claimed by the Indian tribe are identical to the lands returned by the settlement, such that there is no alienation or transfer of title to tribal lands without the consent of Congress that would be prohibited under 25 U.S.C. § 177),

(A) the settlement of the land claim has been entered as a final order of a federal court of competent jurisdiction, or

(B) the Governor of the State has executed an agreement settling the claim.

In accordance with Section 20 of IGRA (25 U.S.C. § 2719), a tribe may conduct class II or class III gaming activities on land acquired by the Secretary of the Interior in trust for the benefit of an Indian tribe after October 17, 1988, only if:

(a) The land meets the criteria or exceptions in Subpart B; or

(b) The Secretary makes a determination under Subpart C and the Governor of the State in which the gaming activity is to be conducted concurs in that determination.

## SUBPART B – EXCEPTIONS TO PROHIBITION ON GAMING ON AFTER-ACQUIRED TRUST LANDS

### § 292.4 What criteria must trust land meet for gaming to be allowed under the exceptions listed in 25 U.S.C. Section 2719(a) of IGRA?

(a) For class II or class III gaming to be allowed on trust land pursuant to Section 2719(a)(1) of IGRA, the land must meet one of the following criteria:

(1) Such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988; or

(2) the Indian tribe has no reservation on October 17, 1988, and

(i) such lands are located in Oklahoma and –

(A) are within the boundaries of the Indian tribe's former reservation, or

(B) are contiguous to other land held in trust or restricted status by the United States for the Indian tribe in Oklahoma; or

(ii) such lands are located in a state other than Oklahoma and are within the Indian tribe's last recognized reservation within the State or States within which such Indian tribe is presently located.

### § 292.5 What must be demonstrated to meet the "settlement of a land claim" exception?

7

§ 292.6 **What must be demonstrated to meet the "initial reservation" exception?**

(a) To meet the requirements of IGRA Section 20(b)(1)(B)(ii), which allows an Indian tribe to conduct gaming on lands acquired after October 17, 1988 if the lands are taken into trust as part of "the initial reservation of an Indian tribe acknowledged by the Secretary under the Federal Acknowledgment Process," gaming may be conducted only when:

(1) the tribe has been acknowledged (federally recognized) through the administrative process pursuant to the regulations set forth at 25 C.F.R. Part 83; and

(2) the lands are located within the tribe's service area, or, if no service area has yet been designated for the tribe, the lands are located within an area where the tribe has significant historical and cultural ties; and

(3) The land has been declared to be a new reservation pursuant to 25 U.S.C. §467; and

(4) This reservation is the initial reservation of the Indian tribe.

§ 292.7 **What must be demonstrated to meet the "restored lands" exception?**

(a) To meet the requirements of IGRA Section 20(b)(1)(B)(iii), which allows an Indian tribe to conduct gaming on lands acquired after October 17, 1988 if the lands are taken into trust as part of "the restoration of lands for an Indian tribe that is restored to federal recognition," gaming may only occur when the criteria in subparagraphs (1), (2), and (3) have been met.

(1) the tribe at one time was federally recognized by the United States government, as evidenced by one or more of the following:

    (i)    the United States at one time entered into treaty negotiations with the tribe;

    (ii)    the Department of the Interior determined that the tribe could organize under the Indian Reorganization Act or the Oklahoma Indian Welfare Act;

    (iii)    Congress at any time appropriated money for that particular tribe's benefit;

(iv) Congress enacted legislation specific to, or including the particular tribe indicating that a government-to-government relationship existed;

(v) the United States at one time acquired land for that particular tribe's benefit;

(vi) any other evidence that demonstrates the existence of a government-to-government relationship between the tribe and the federal government.

(2) The tribe at some later time lost its government-to-government relationship, as evidenced by either:

(i) legislative termination; or

(ii) administrative termination demonstrated by historical or modern testimony or other written documentation from officials of the Department of the Interior or the Department of Justice that the Executive Branch no longer recognized a government-to-government relationship with the tribe.

(3) At a time after termination, the tribe was restored to federal recognition by either:

(i) congressional enactment of legislation recognizing, acknowledging, or restoring the government-to-government relationship between the United States and the tribal government (available to tribes terminated by administrative action; required for tribes terminated by Congressional action);

(ii) recognition through the administrative Federal Acknowledgment Process pursuant to 25 C.F.R. § 83.8; or,

(iii) a judicial determination or a court-approved stipulated entry of judgment entered into by the United states providing that the tribe's government-to-government relationship with the United States was never actually legally terminated despite specific action or actions by the Executive Branch purporting to terminate the relationship with the tribe.

(b) To qualify as "restored lands," it must be demonstrated that:

(1) the legislation restoring the government-to-government relationship between the United States and the tribe requires or authorizes the Secretary to take land within a specific geographical area and the lands are within such specific geographical area; or

(2) the tribe has a modern connection to the land as evidenced by one or more of the following:

(i) the land is located within the tribe's service area, as designated by the Bureau of Indian Affairs, the Department of Health and Human Services, including the Indian Health Service, or the Department of Housing and Urban Development; or

(ii) a majority of the tribe's members resides within fifty (50) miles of the location of the land; and

(3) the tribe has a significant historical connection to the land as evidenced by one or more of the following:

(i) the land is located within the boundaries of the tribe's last reservation reserved to the tribe by a treaty;

(ii) the land is located in an area to which the tribe has significant documented historical connections, significant weight being given to historical connections documented by official Bureau of Indian Affairs or Department of the Interior findings, Indian Claims Commission, other federal court findings, or congressional findings; and

(4) there is a reasonable temporal connection between the acquisition of the land and the tribe's restoration, which may be evidenced by either of the following:

(i) the land is the first land that the tribe has acquired since the tribe was restored to federal recognition; or

(ii) the tribe submitted an application to take the land into trust within ten (20) years after the tribe was restored to federal recognition; and

(5) if the tribe is acknowledged under 25 C.F.R. § 83.8, it does not already have an initial reservation.

### SUBPART C – SECRETARIAL TWO-PART DETERMINATION AND GOVERNOR'S CONCURRENCE

§ 292.8 Can a tribe conduct gaming activities on lands acquired in trust after October 17, 1988, if the land does not qualify under one of the exceptions in Subpart B?

A tribe can conduct gaming on land acquired in trust after October 17, 1988, that does not meet the criteria in Subpart B only after all of the following occur:

(a) The tribe asks the Secretary in writing to make a Secretarial determination that a gaming establishment on land acquired in trust after October 17, 1988, is in the best interest of the tribe and its members and not detrimental to the surrounding community;

(b) The Secretary consults with the tribe and appropriate State and local officials, including officials of other nearby tribes;

(c) The Secretary makes a determination that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members and would not be detrimental to the surrounding community; and

(d) The Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination (25 U.S.C. § 2719(b)(1)(A)).

§ 292.9 Where must a tribe file an application for a Secretarial determination?

A tribe must file its application for a Secretarial determination with the Regional Director of the BIA Regional Office having responsibility over the land where the gaming establishment is to be

located.

§ 292.10 **May a tribe request a Secretarial determination for lands not yet held in trust?**

Yes. A tribe can apply for a two-part Secretarial determination under § 292.5 for land not yet held in trust. The tribe must file this application at the same time that it applies under 25 CFR Part 151 to have the land taken into trust.

§ 292.11 **What must an application for a Secretarial determination contain?**

An application requesting a Secretarial determination under § 292.8 must include the following information:

(a) The full name, address, and telephone number of the Indian tribe submitting the application;

(b) A physical description of the location of the land, including a legal description supported by a survey or other document;

(c) Proof of present ownership and title status of the land;

(d) Distance of the land from the Indian tribe's reservation or trust lands, if any;

(e) Information required by § 292.12 to assist the Secretary in determining whether the proposed gaming establishment will be in the best interest of the tribe and its members;

(f) Information required by § 292.13 to assist the Secretary in determining whether the proposed gaming establishment will not be detrimental to the surrounding community; and

(g) The authorizing resolution from the tribe submitting the application;

(h) The tribe's gaming ordinance or resolution approved by the National Indian Gaming Commission in accordance with 25 U.S.C. § 2710, if any;

(i) The tribe's organic documents, if any;

(j) The tribe's class III gaming compact with the State where the gaming establishment is to

be located, if any; and

(k) Any existing or proposed management contract required to be approved by the National Indian Gaming Commission pursuant to 25 U.S.C. § 2711 and 25 C.F.R. Part 533.

§ 292.12 **What information must an application contain on the benefits of a proposed gaming establishment to the tribe and its members?**

To satisfy the requirements of § 292.11(e), an application must contain:

(a) Projections of class II and/or class III income statements, balance sheets, fixed assets accounting, and cash flow statements for the gaming entity and the Indian tribe;

(b) Projected tribal employment, job training, and career development;

(c) Projected benefits to the Indian tribe from tourism;

(d) Projected benefits to the Indian tribe and its members from the proposed uses of the increased tribal income;

(e) Projected benefits to the relationship between the Indian tribe and the surrounding community;

(f) Possible adverse impacts on the Indian tribe and plans for addressing those impacts;

(g) Distance of the land from the location where the tribe maintains core governmental functions;

(h) Evidence that the tribe owns the land in fee or holds an option to acquire the land at the sole discretion of the tribe, or holds other contractual rights to cause the lands to be transferred directly to the United States;

(i) Any other information that may provide a basis for a Secretarial determination that the gaming establishment would be in the best interest of the Indian tribe and its members, including copies of any:

(1) Consulting agreements;

(2) Financial agreements; and

(3) Other agreements relative to the purchase, acquisition, construction, or financing of the proposed gaming facility, or the acquisition of the land where the facility will be located.

§ 292.13 What information must an application contain on the detrimental impacts of a proposed gaming establishment?

To satisfy the requirements of § 292.11(f), an application must contain:

(a) Information regarding environmental impacts and plans for mitigating adverse impacts, including information that allows the Secretary to comply with the requirements of the National Environmental Policy Act (NEPA) (for example, an Environmental Assessment (EA) or an Environmental Impact Statement (EIS));

(b) Reasonably anticipated impacts on the social structure, infrastructure, services, housing, community character, and land use patterns of the surrounding community;

(c) Impacts on the economic development, income, and employment of the surrounding community;

(d) Costs of impacts to the surrounding community and sources of revenue to accommodate them;

(e) Proposed programs, if any, for compulsive gamblers and the sources of funding; and

(f) Any other information that may provide a basis for a Secretarial determination that the gaming would not be detrimental to the surrounding community, including memoranda of understanding and inter governmental agreements with affected local governments.

§ 292.14 How will the Regional Director conduct the consultation process?

(a) The Regional Director will send a letter that meets the requirements in § 292.15 and

which solicits comments within a 60-day period to each of the following:

(1) Appropriate State and local officials; and

(2) Officials of nearby tribes.

(b) Upon written request, the Regional Director may extend the 60-day comment period for an additional 30 days.

(c) After the close of the consultation period, the Regional Director must:

(1) Submit a copy of the consultation comments to the applicant tribe;

(2) Allow the tribe to address or resolve any issues raised in the responses to the consultation letters;

(d) The applicant tribe must submit written comments, if any, to the Regional Director within 60 days of receipt of the consultation comments; and

(e) On written request, the Regional Director may extend the 60-day comment period in paragraph (c)(3) for an additional 30 days.

§ 292.15 What information must the consultation letter include?

(a) The consultation letter required by § 292.14(a) must:

(1) Describe or show the location of the proposed gaming facility;

(2) Provide information on the proposed scope of gaming; and

(3) Include other information that may be relevant to a specific proposal, such as the size of the proposed facility, if known.

(b) The consultation letter must request recipients to submit comments on the following areas within 60 days of receiving the letter:

(1) Information regarding environmental impacts and plans for mitigating adverse impacts;

(2) Reasonably anticipated impact on the social structure, infrastructure, services, housing,

community character, and land use patterns;

(3) Impact on the economic development, income, and employment;

(4) Costs of impacts to the surrounding community or nearby tribe and sources of revenue to accommodate them;

(5) Proposed programs, if any, for compulsive gamblers and the sources of funding; and

(6) Any other information that may provide a basis for a Secretarial determination that the gaming is not detrimental to the surrounding community.

§ 292.16 What criteria will the Secretary use to evaluate whether a proposed gaming establishment would be in the best interest of the tribe and its members and would not be detrimental to the surrounding community?

(a) We will consider all the information submitted pursuant to § 292.12 in evaluating whether the proposed gaming establishment is in the best interest of the tribe and its members.

(b) We will consider all the information submitted or developed pursuant to § 292.13 and all the documentation received pursuant to § 292.14 in evaluating whether the proposed gaming establishment would not be detrimental to the surrounding community.

§ 292.17 How does the Secretary request the Governor's concurrence?

(a) If the Secretary makes a favorable two-part determination, the Secretary will send to the Governor of the State:

(1) A written notification of the Secretarial determination and Findings of Fact;

(2) A copy of the entire application record; and

(3) A request for the Governor's concurrence in the Secretarial determination.

17

(b) If the Governor does not affirmatively concur with the Secretarial determination:

(1) The land may not be used for gaming;

(2) If the land is already held in trust, the applicant tribe may use it for other purposes; and

(3) If the land is proposed for trust status, it may be taken into trust for non-gaming uses after consideration of a revised application.

(c) If the Governor does not respond to the Secretary's request for concurrence in the Secretarial determination within one year of the date of the request, the Secretary may, at the request of the applicant tribe or the Governor, grant an extension of up to 180 days.

(d) If the Governor does not respond during the extension period, the Findings of Fact will expire, and the applicant tribe will be notified in writing that the Secretarial determination is no longer valid.

§ 292.18 Can members of the public review the tribe's application for a Secretarial determination?

Subject to restrictions on disclosure required by the Freedom of Information Act (5 U.S.C. § 552), the Privacy Act (5 U.S.C. § 552a) and the Trade Secrets Act (18 U.S.C. § 1905), the tribe's application and all supporting documents will be available for review at the local BIA agency or regional office having administrative jurisdiction over the land.

§ 292.19 Do information collections under this part have Office of Management and Budget approval?

We will submit a request for approval of the information collection requirements in §§ 292.11, 292.12, 292.13, 292.14 to the Office of Management and Budget (OMB). We may not collect or sponsor, and a person is not required to respond to, a collection of information until we have:

(a) Obtained OMB approval; and

(b) Revised this section (§ 292.16) to reflect OMB approval by publishing a final rule in the <u>Federal Register</u>.

Dated:

Assistant Secretary - Indian Affairs